**Samuel Dean STITT, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 06–02–00080–CR.**

Court of Appeals of Texas, Texarkana.

Submitted Feb. 20, 2003.

Decided April 3, 2003.

Timothy Hootman, Houston, for appellant.

Peyton Z. Peebles III, Assistant District Attorney, William J. Delmore III, Harris County Assistant District Attorney, Houston, for appellee.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

Opinion by Justice ROSS.

Samuel Dean Stitt was found guilty by a jury of interfering with public duties, pursuant to TEX. PEN.CODE ANN. § 38.15 (Vernon 2003).[1] The jury assessed his punish-

---

1. [Section] 38.15. **Interference With Public Duties**

(a) A person commits an offense if the person with criminal negligence interrupts,

ment at seventy-five days in jail and a $500.00 fine, and recommended he be placed on community supervision for one year. Sentence was rendered in accordance with the jury verdict. Stitt appeals, alleging the trial court erred: (1) in not allowing defense witnesses to testify regarding Stitt's character; (2) in giving a jury charge that deviated from the charging instrument; and (3) in allowing the State to amend the charging instrument after both sides had rested.

Over Labor Day weekend of 2001, Stitt, a resident of Houston, entered a sailboat race from South Padre Island to Corpus Christi. In route to the sailing event, Stitt's van, which was towing a catamaran, had engine problems. Stitt called his brother-in-law for help, and his brother-in-law towed the catamaran the rest of the way to South Padre Island with another vehicle. The disabled van was left in Victoria, Texas, until the return trip at the end of the weekend, when Stitt's sister and nephew gave him a ride to the place where he had left his van. Stitt, his sister, and his nephew then continued back to Houston in two different vehicles. When they reached the Sam Houston tollway, Stitt paid his toll and drove past the tollbooth. Stitt testified that, when his sister did not follow him past the booth, he pulled over to the side of the road and waited for eight or ten minutes. Stitt then walked back to his sister's vehicle stopped at the tollbooth. He eventually entered his sister's vehicle, seating himself in the passenger seat. Stitt's sister had not made it past the tollbooth because she only had a fifty-

dollar bill, and the person managing the tollbooth would not accept anything larger than a twenty-dollar bill. Traffic accumulated behind the sister's vehicle as she waited.[2]

Stitt and the State disagree as to what happened next, but they both agree three police officers responded to the scene. The officers testified that all three occupants of the vehicle were uncooperative and that it eventually became necessary to remove Stitt's sister from the vehicle. The officers further testified that, as they were removing her, Stitt took hold of his sister and pulled her back. Stitt denied that he interfered with the officers' removal of his sister from the vehicle, but said he was concerned about the officers' actions because his sister had brittle bones, which he said was a result of her having had cancer. The officers also testified that, when Stitt was asked for his driver's license, he refused to produce it. After asking Stitt to step out of the vehicle twice, the officers forcibly removed him.[3]

As his first point of error, Stitt contends the trial court should have allowed him to introduce certain character evidence during his case in chief. Stitt attempted to call two witnesses, Marie Wilcoxson and James Cass, to testify as to his good reputation for truthfulness, but the State objected on the grounds of relevancy and under Rule 608. Tex.R. Evid. 608. The trial court sustained the State's objection. We uphold a trial court's decision to admit or exclude evidence absent an abuse of discretion by the trial judge. *See Powell*

disrupts, impedes, or otherwise interferes with:
    (1) a peace officer while the peace officer is performing a duty or exercising authority imposed or granted by law;
    . . . .
    (b) An offense under this section is a Class B misdemeanor.

Tex. Pen.Code Ann. § 38.15 (Vernon 2003).

2. The sister is facing separate charges for blocking the roadway.

3. The sister from the incident served as Stitt's attorney at his trial. Their relationship and her involvement was kept from the jury.

*v. State,* 63 S.W.3d 435, 438 (Tex.Crim. App.2001).

■ First, Stitt contends that not allowing these witnesses to testify violated his rights to due process and due course of law. However, at trial, Stitt's counsel made no mention of a violation of his due process rights; instead, Stitt's counsel argued the testimony was admissible because the State had attacked Stitt's character for truthfulness. Even constitutional errors may be waived by failure to object at trial. *Briggs v. State,* 789 S.W.2d 918, 924 (Tex.Crim.App.1990). A point of error on appeal must correspond to an objection made at trial. *Dixon v. State,* 2 S.W.3d 263, 265 (Tex.Crim.App.1998). Because Stitt did not argue constitutional grounds for admitting these witnesses at the trial level, Stitt waived this claim, and our review is limited to whether the trial court abused its discretion under the state statute.

■ Stitt offered the following testimony from Wilcoxson, in relevant part, outside the presence of the jury:

Q. Do you have an opinion as to Mr. Stitt's character for truthfulness?

A. ... yes ma'am, I do.

Q. Is it good, or bad?

A. It's good. I've never known him to be anything other than—than honest and kind.

Stitt was also allowed to place on the record, outside the presence of the jury, that Cass, if permitted to testify, would say that Stitt's character for truthfulness is good.

Neither witness offered by Stitt had personal knowledge of the incident. Yet, Stitt contends their testimony was relevant because "it tended to prove his good character and therefore that it was improbable that he interfered with the officers as alleged." It is apparent, however, the prof-

fered testimony of these two witnesses was much narrower than proof of "good character;" they planned to testify specifically concerning Stitt's character for truthfulness. Rule 608 governs the admission of evidence concerning a witness' character for truthfulness. Tex.R. Evid. 608. Accordingly, the credibility of a witness may be supported by evidence in the form of opinion or reputation, subject to these limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness; and (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise. Tex.R. Evid. 608.

■ Without citations to the record, Stitt contends his reputation for truthfulness was attacked by the State's "aggressive cross-examination" of him. In support of this contention, Stitt cites three cases: *Smith v. State, Johnson v. State,* and *Proctor v. State. Smith v. State,* 595 S.W.2d 120 (Tex.Crim.App. [Panel Op.] 1980); *Johnson v. State,* 583 S.W.2d 399 (Tex.Crim.App. [Panel Op.] 1979); *Proctor v. State,* 503 S.W.2d 566 (Tex.Crim.App. 1974). All these cases concern bolstering the testimony of an identification witness when the testimony had been challenged on cross-examination. *Smith,* 595 S.W.2d at 125; *Johnson,* 583 S.W.2d at 403–04; *Proctor,* 503 S.W.2d at 568. This case is distinguishable because it has nothing to do with identification. Instead, Stitt attempted to introduce evidence of his character trait of truthfulness to show he was a "believable" witness. The fact that a defendant's testimony disputes that offered by the state does not of itself create an attack on his general reputation, which would warrant the admission of character testimony. *Spector v. State,* 746 S.W.2d 946, 951 (Tex.App.-Austin 1988, pet. ref'd). Because there was no general attack on

Stitt's reputation for truthfulness, there was no reason for the trial court to allow the testimony of Stitt's character witnesses under Rule 608.

Also without citations to the record, Stitt contends he should have been allowed to introduce this character evidence because the State developed a motive for him to lie by asking him whether he planned to sue the county for personal injuries. The following exchange took place between Stitt and the prosecutor:

> Q. After getting out of jail, do you know if your sister had any injuries as a result of the arrest?
>
> . . . .
>
> A. I don't think she did, but I really don't know.
>
> . . . .
>
> Q. And you plan on filing a personal-injury suit against this—Harris County; don't you?
>
> [Stitt's Counsel]: Objection, Judge. Irrelevant.
>
> THE COURT: Sustained.
>
> [Stitt's Counsel]: Move to strike.
>
> THE COURT: Disregard the last question/comments of the Prosecutor.

As noted above, for character evidence concerning truthfulness to be admissible, the character of the witness for truthfulness must have been attacked. Tex.R. Evid. 608. Although the State's question may have suggested a motive for Stitt to lie, Stitt testified he was not planning to file a civil suit. Moreover, the trial court sustained Stitt's objection and instructed the jury to disregard the prosecutor's "question/comments."

■ Stitt further contends his character witnesses should have been allowed to testify under Rule 404, which allows testimony concerning "a pertinent character trait" of an accused in a criminal case. Tex.R.

Evid. 404(a)(1)(A). A pertinent character trait is "one that relates to a trait involved in the offense charged or a defense raised." *Spector*, 746 S.W.2d at 950. Interference with public duties occurs when a person, with criminal negligence, interrupts, disrupts, impedes, or otherwise interferes with a peace officer while the peace officer is performing a duty or exercising authority imposed or granted by law. Tex. Pen.Code Ann. § 38.15. The character trait of truthfulness is not a pertinent trait to this charge. Wilcoxson's testimony that Stitt was "honest and kind" was nonresponsive, in that Stitt was only asking her opinion about his truthfulness. Because truthfulness was not a pertinent trait with respect to a charge of interference with public duties, the testimony was not admissible under Rule 404. Stitt's first point of error is overruled.

■ Stitt next contends the trial court erred by giving a jury charge that deviated from the charging instrument. The charging instrument (information) accused Stitt with interfering with the official duties of an officer by the name of "Nelson." The officer's correct name is Neilon. During the charge conference, the State requested that the jury charge refer to the officer by his correct name, citing *Gollihar v. State,* and arguing that this variance from the information was not material. *Gollihar v. State,* 46 S.W.3d 243 (Tex.Crim.App.2001). Stitt argued that the language in the jury charge had to follow the information, and stated, "it might not be a fatal flaw but it [the charge] has to match . . . the information." The trial court used the officer's correct name of Neilon in the jury charge.

■ The State contends the difference between "Nelson" and "Neilon" is a question of *idem sonans.* Names are *idem sonans* if the attentive ear finds difficulty in distinguishing them when pronounced, or if common and long-continued usage has

made them identical in pronunciation, irrespective of the rules of orthography. *Martin v. State,* 541 S.W.2d 605, 606 (Tex. Crim.App.1976). In other words, identity of sound is regarded as a surer method of measuring the similarity of names than identity of spelling, and so long as the names can be sounded alike without doing violence to the power of the letters, any variation in orthography is immaterial, provided the misspelling does not transform the name into a wholly distinct appellation. *Id.* at 606–07.

A variance between the allegation and proof of a name will not impugn the validity of a judgment of conviction so long as the names sound alike or the attentive ear finds difficulty distinguishing them when pronounced. *Farris v. State,* 819 S.W.2d 490, 496 (Tex.Crim.App.1990), *overruled on other grounds, Riley v. State,* 889 S.W.2d 290, 301 (Tex.Crim.App.1993) (op. on reh'g). If a question arises whether two spellings are *idem sonans,* it is an issue of fact for the jury. *Farris,* 819 S.W.2d at 496. Unless the evidence shows the two are patently incapable of being sounded alike, a failure to request submission of the issue for the jury consideration will defeat any claim of a variance on appeal. *Id.* We find no evidence in the record that "Neilon" and "Nelson" are patently incapable of being sounded alike. Therefore, the doctrine of *idem sonans* is applicable. Because Stitt did not request the jury to be instructed concerning *idem sonans,* he waived any complaint concerning the variant spelling of the officer's name when he did not ask that the issue be presented for the jury's consideration.

Even if we were to address the variant spellings of the officer's name in the information and in the jury charge as error, Stitt still fails to prove he was harmed by the variance. An error in the jury charge which has been properly pre-

served by objection will call for reversal as long as the error is not harmless. *Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Crim. App.1985) (op. on reh'g). The "some harm" test does not mandate reversal on a showing of possible harm-it requires that actual harm be established. *Medina v. State,* 7 S.W.3d 633, 643 (Tex.Crim.App. 1999).

When the State initially arraigned Stitt, it used the name "Neilon" in referring to the officer. Stitt's counsel objected to the pronunciation because the information said "Nelson." At trial, during cross-examination, Stitt asked Deputy Todd Neilon to spell his name, and then asked, "It's not Nelson?" Obviously, Stitt was aware of the variance between the name used in the information and the proof offered at trial. Even so, Stitt never claimed to be disadvantaged or surprised by the conflicting spellings of the officer's name. In fact, the name or identity of the officer played no role in Stitt's defense. Instead, Stitt completely denied the charge against him, contending he only watched and did not interfere with the removal of his sister from the car. There is no evidence the variant spelling of the officer's name caused any harm to Stitt. His second point of error is overruled.

As his third point of error, Stitt contends the trial court erred in allowing the State to amend the charging instrument after both sides had rested. Article 28.10 reads as follows:

> (a) After notice to the defendant, a matter of form or substance in an indictment or information may be amended at any time before the date the trial on the merits commences. On the request of the defendant, the court shall allow the defendant not less than 10 days, or a shorter period if requested by the defendant, to respond to the amended indictment or information.

(b) A matter of form or substance in an indictment or information may also be amended after the trial on the merits commences if the defendant does not object.

(c) An indictment or information may not be amended over the defendant's objection as to form or substance if the amended indictment or information charges the defendant with an additional or different offense or if the substantial rights of the defendant are prejudiced.

TEX.CODE CRIM. PROC. ANN. art. 28.10 (Vernon 1989). Stitt contends the trial court allowed the State to "amend its information after the parties had rested and during the charge conference." Yet, in reality, the trial court allowed the State to amend the jury charge, not the information. Because there was no amendment to the information, this point of error is overruled.

We affirm the judgment.